BEEBE et al. v. WELLS.

In re FEDERATION SHOE CO.

(Circuit Court of Appeals, First Circuit. February 13, 1907.)

No. 666.

BILLS AND NOTES—CONSIDERATION—FORBEARANCE TO SUE.

The P. S. Company, being insolvent, instead of liquidating, formed a new corporation, which subsequently became bankrupt, conveying a substantial portion of the assets of the P. S. Company to the new corporation, in payment of capital stock. Claimant, a creditor of the P. S. Company, had been demanding payment, and, after the reorganization, proposed that the balance of the P. S. Company's assets be transferred to the new corporation, in consideration of certain notes of the latter which should be transferred by the new corporation to claimant as security for its debt, threatening otherwise to sue to wind up both corporations. The notes were executed as agreed, but no additional property was transferred from the P. S. Company to the bankrupt. *Held*, that claimant's promise to forbear suit against both corporations constituted a sufficient consideration for the bankrupt's notes.

Appeal from the District Court of the United States for the District of Massachusetts.

On appeal from an order affirming an order of a referee disallowing the claim of Lucius Beebe & Sons against the estate of the Federation Shoe Company, a bankrupt.

The following is the opinion of Dodge, District Judge, in the District Court:

The notes upon which the claim of the petitioners for review is based are dated March 20, 1902. They are payable to the petitioners' order, and signed: "The Federation Shoe Company, by H. M. Cushman, Treas." The bankrupt was a corporation under the laws of Massachusetts. Cushman was its treasurer, and signed the notes, which were then delivered to the petitioners.

The Federation Shoe Company was adjudged a bankrupt October 17, 1902, upon an involuntary petition filed against it on September 26, 1902. The petitioners' claim against it upon these notes was rejected by the referee, and upon their petition for review a certificate was filed June 15, 1903, which was recommitted to the referee April 17, 1905, to hear further evidence. The referee's decision after the hearing on recommittal was the same as at first, and the petitioners now seek to review that decision. The question certified by the referee (March 24, 1906) is: "Are the notes offered in proof good and valid notes and entitled to be proved against the estate of the bankrupt?" By the findings of fact and opinion which accompany the referee's certificate it appears that he answered this question in the negative, because on the facts found he ruled that the notes were without consideration, and that the petitioners are not bona fide purchasers of the notes for value without knowledge of the want of consideration.

No reason appears for questioning any of the findings of fact which the referee has made, and they are therefore approved and adopted.

He has declined to make certain further findings of fact requested by the petitioners. These requests, and the referee's decision upon each, appear in his report of findings, being numbered 4, 5, 6, 7, and 8. As to requests 4 and 5, it was for the referee to determine how far Small's statements could be relied upon. His refusal to rely upon them is supported by the undisputed facts appearing regarding Small, and nothing has been shown which warrants the court in holding that the refusal was wrong. As to the request numbered 6, also, it cannot be said that the referee was required by the evidence before him to make the finding requested. I am unable, upon the evidence before the referee, to see any reason for doubting the correctness of his qualified finding made upon the request numbered 7.

In refusing the request numbered 8, the referee decides against the petitioners' contention that a good consideration for the notes is found in their forbearance to bring a suit in equity for the purpose of following those assets of the Pray-Small Company which that company had conveyed to the bankrupt in exchange for $30,000 in its stock. Such a suit would, it is claimed, have resulted in avoiding the conveyance referred to as fraudulent, and in a marshaling of the bankrupt's assets for the purpose of paying therefrom the indebtedness due the petitioners from the Pray-Small Company; and that such would have been the result of the suit, had it been brought, must be granted, in view of the findings that the conveyance was in fraud of the petitioners' rights as creditors of the grantor and gave them the right to avoid it. The petitioners, however, fail to show, in my opinion, that the notes were given in consideration of their forbearance to bring such a suit.

No such suit was brought, it is true, but it does not follow, from the mere fact that the petitioners did not bring it, that the notes were upon consideration of their forbearance. There must have been an express or implied agreement to forbear between them and the bankrupt. Boyd v. Freize, 5 Gray (Mass.) 553. No express agreement is claimed, and the evidence does not show an implied agreement.

The actual consideration for which the notes were, in fact, given must be ascertained from the petitioners' letter to Small dated March 20, 1902. The notes bear the same date, and, as the referee has found, were made by the treasurer of the bankrupt corporation, at Small's request, upon receipt of the letter referred to. Not only does that letter specify, as the consideration contemplated for the proposed notes, the purchase which it suggests by the bankrupt of more of the Pray-Small Company's assets, and not only does it omit any statement or intimation that the petitioners will attack the former conveyance by that company as fraudulent unless the proposed notes

are given, but it states that the assets of that company were undoubtedly sufficient, when that conveyance was made, to pay all its debts. This statement is inconsistent with the findings now made by the referee, it is true; but it is nevertheless inconsistent also with the contention that the petitioners were, when the notes were given, threatening the bankrupt with a suit to avoid the former conveyance, as is also the further statement in the letter that there seems to be no good reason why the Pray-Small Company should not make a further conveyance of its assets to the bankrupt.

Nothing which may have been said or written before March 20, 1902, to Small or to the bankrupt by the petitioners or their counsel, seems to me sufficient to affect the above conclusion, because the letter of that date, which as the referee has found was drafted by the petitioners' counsel, and must be considered as written in view of everything which had been previously discussed, expressly states that the previous request for payment is "somewhat modified," and thereupon proceeds as above stated. The position stated in the letter must be considered as the attitude of the petitioners upon which the parties acted in giving and receiving the notes, to the exclusion of anything inconsistent therewith involved in what may have passed between them before the writing of the letter. It is indeed said in the letter that the petitioners "do not care to unnecessarily cripple your new company by requiring a liquidation of the affairs of both companies," etc. But since the other statements made in the letter are, as has been indicated, wholly inconsistent with the theory that it was in the petitioners' power to accomplish anything of the kind, I am unable to consider this language as manifesting any intent on their part to make the attempt.

The proposed notes were, according to the letter, to be given by the bankrupt to the Pray-Small Company, which company was then to deliver them to the petitioners as collateral security for their claim against it. This course was not, in fact, followed. The notes were, instead, made payable to the petitioners direct, indorsed by the Pray-Small Company, and thus indorsed delivered to the petitioners.

The petitioners, however, accepted this arrangement as the equivalent of that proposed in the letter, and I see nothing, therefore, in the fact that it was a departure to the above extent from the arrangement proposed which requires any modification of the conclusions herein reached.

The separate written inquiries addressed by the petitioners' counsel on April 23, 1902, after the petitioners had received the notes, to the Pray-Small Company and the bankrupt, and the replies thereto received from each, afford further confirmation of the strongest character to the view that the only consideration for the notes was understood by the petitioners and the bankrupt to be property sold by the Pray-Small Company to the bankrupt. The substance of these inquiries and replies is set forth in the referee's report. The petitioners' understanding is thus definitely set forth in the inquiry addressed to the bankrupt: "I am advised that in payment of these notes (the Pray-Small Company notes then held by the petitioners) the Pray-Small Company has given to L. Beebe & Sons certain notes made by you and indorsed by the Pray-Small Company, which were given by you to Pray-Small Company in payment of property which you purchased of Pray-Small Company." If any other consideration, or if a different consideration, was then in the petitioners' minds, it is difficult to believe that all reference to it would have been here omitted, considering the circumstances under which this inquiry was written and the purpose for which it was written.

Lastly, the proof of claim in these proceedings, sworn to December 5, 1902, by one of the petitioners, contains the explicit statement, "These notes were given by the bankrupt for merchandise and assets sold to them by the Pray-Small Company, and Pray-Small Company transferred them to creditors in payment of indebtedness to the deponents," and no reference whatever is made in it to any other or any different consideration for the notes.

There never was, in fact, any such purchase by the bankrupt from the Pray-Small Company, as suggested in the letter of March 20, 1902, or as referred to in the letters of inquiry of April 23, 1902. Small's answers to those inquiries were untrue. Unless, therefore, the petitioners were misled by the bankrupt into the belief that it had, in fact, bought merchandise of

the Pray-Small Company and had given these notes in payment therefor, the referee's ruling must stand.

The referee has found on the evidence before him that the petitioners did not believe Small's statements as to the value of the Pray-Small Company's assets, but knew them to have been false, and, in view of Small's control of both companies, the petitioners' knowledge that he so controlled them, their knowledge that the bankrupt's notes were, in fact, given in payment of the debt of another, the indications afforded them from the circumstances that no such sale and purchase could have been made by proper corporate action on the part of both companies, and the indications afforded them from their knowledge of the affairs of both companies that such a sale and purchase would at best have been of no benefit to the bankrupt, the referee was of opinion that the petitioners were bound to see to it, before they acted upon Small's statements, that the sale and purchase had been actually made. With these conclusions I agree. The petitioners, in my opinion, should have been put on their guard by the facts shown to have been within their knowledge or the means of knowledge at their command. These facts were of such a character that they must be regarded as having acted at their own peril in taking the notes, and cannot claim to have been misled. The notes offered in proof, therefore, are not good and valid notes and entitled to be proved against this estate. The referee's order disallowing them is affirmed.

Boyd B. Jones (Hurlburt, Jones & Cabot, on the brief), for appellants.

Elisha M. Stevens (William H. Niles and Niles, Stevens, Underwood & Mayo, on the brief), for appellee.

Before PUTNAM and LOWELL Circuit Judges, and ALDRICH, District Judge.

LOWELL, Circuit Judge. This is an appeal from a judgment of the District Court disallowing the appellant's proof of claim against the bankrupt estate. The claim is based upon promissory notes given to Beebe, the appellant, by the bankrupt, the Federation Shoe Company, and indorsed by another corporation, the Pray-Small Company. The referee disallowed the proof, and on appeal his order was sustained by the learned district judge, on the ground that the notes, being given for the debt of another, were without consideration, moving to the bankrupt, and that the creditor did not purchase them in good faith, believing that a consideration for them existed. Morawetz on Private Corporations, § 423. The creditor contends that the notes were given by the bankrupt for value, and, if he can establish this, his claim must be allowed.

The Pray-Small Company, a corporation controlled by Small, owed Beebe on promissory notes and on account about $10,000. The corporation was insolvent. In order to continue its business unhampered by its creditors, Small organized the Federation Shoe Company, the bankrupt in this case. A large part of the property of the Pray-Small Company was transferred to the bankrupt in exchange for its corporate stock. After this transfer, Beebe sought, through his counsel, Jones, to collect from the Pray-Small Company the amount due on the notes, or to obtain further security. Jones had an interview with Small, in which Small described the condition of the two companies. Jones thereupon asked him to transfer to Beebe, as collateral security for the debt, the accounts receivable of the Pray-Small Company. This Small refused to do. Jones then suggested that the Pray-Small

Company sell to the bankrupt a part of its property yet remaining untransferred, for which the bankrupt should give its promissory notes to the Pray-Small Company, and that the Pray-Small Company should indorse these notes to Beebe. This transaction in effect would give to Beebe an obligation of the bankrupt as security for the indebtedness of the Pray-Small Company. This, also, Small refused to do. Jones further testified that he told Small:

"I considered that this new corporation and the conveyance of the assets to this new corporation was for the purpose of continuing the business of the old corporation, or enabling the old corporation, the people interested in it, to keep along the business, and that it was in fraud of creditors, that they had no right to do it, that we had a right to have both companies liquidated and have a marshaling of the assets, and that we should do it. I told him we should not permit the business to continue as it was continuing at the present time, and that, unless we got payment or security, we would close them both up. Then I advised him to talk with Mr. Beebe about it."

"I said I would force both companies into liquidation and have the assets marshaled, unless we had security or payment, and I suggested, myself, this method of their giving us security. The idea of security was abandoned later on, because it was just as well to have the notes with the same maker and indorser as to have the notes of the Pray-Small Company with these notes as collateral. It made no difference. We had the liability of each company for the whole indebtedness."

What was the negotiation between Small and Beebe does not appear in evidence. Beebe was not called. Small had absconded. A few days afterwards Beebe told Jones that he had not made much progress with Small. Jones then wrote a letter, which Beebe signed as follows:

"Boston, Mass., March 20, 1902.

"L. Linn Small, c/o Pray-Small Company, Haverhill, Mass.—Dear Sir: Since seeing you I have given the matter of your indebtedness to our firm pretty careful consideration, and am inclined to somewhat modify my request for payment. The situation is substantially this: Pray-Small Company owes L. Beebe & Sons on open account $3,182.02 and notes amounting to $6,667.82 together with interest on both sums.

"The assets of Pray-Small Company at the time of the formation of the Federation Shoe Company were undoubtedly sufficient in value to pay all of its indebtedness; but such payment would have required the liquidation of its business. Instead of liquidating, Pray-Small Company formed a corporation, to wit, the Federation Shoe Company, to which it conveyed a substantial portion of its assets in payment of capital stock; and this capital stock is now held by Pray-Small Company.

"From your standpoint it was desirable for you to continue on in business by this method. From our standpoint a liquidation of the business of the company was more desirable. We do not care to continue to be creditors of a corporation which has ceased to do business; but, on the other hand, do not care to unnecessarily cripple your new company by requiring a liquidation of the affairs of both companies, a marshaling of the assets, and the payment of our claim in cash. As you say it would be for the mutual benefit of both companies that the Federation Shoe Company should purchase some more of the assets of Pray-Small Company on reasonable terms, there seems to be no good reason why such purchase should not be made, and payment could be made in the notes of the Federation Shoe Company. We would accept the notes of the Federation Shoe Company as collateral security for the payment of our claims, said notes to be as follows:

"$1,500 in four months from date; $500 in five months from date; and $500 payable at the expiration of each and every month thereafter until the whole amount is paid, interest at five per cent.

"We feel that this proposition is an exceedingly liberal one on our part and one of which you should be glad to avail yourself. In conclusion, in

order to avoid any possible misapprehension, I may add that we shall not allow our claim to stand longer in its present form, and must ask you for early and definite information as to your intentions in the matter.

"Yours truly."

About April 20th Jones received the notes offered for proof, signed by the bankrupt and indorsed in blank by the Pray-Small Company. On his inquiry, he was informed by Small that the property mentioned in the letter of March 20th had been transferred to the bankrupt. The old notes of the Pray-Small Company were thereupon surrendered. Beebe contends that the bankrupt received value for the notes, to wit, an implied agreement that Beebe would not carry out his threat to liquidate both companies. The trustee contends that this was no part of the consideration moving to the bankrupt, but only the merchandise which was to be turned over by the Pray-Small Company. In fact, there was no transfer of merchandise, if any merchandise existed. An agreement not to prosecute a doubtful claim is a thing of value, and if Beebe made such an agreement, and if the agreement was the consideration of the notes in whole or in part, the trustee does not dispute that Beebe is entitled to share in the distribution of the bankrupt's estate.

Taking all the facts together, we are of opinion that the creditor's contention is well founded. We attach particular importance to the purpose expressed by Jones in his interview with Small and reiterated in the letter of March 20th. We accept his language as establishing his bona fide intention to institute proceedings in liquidation in order to protect his client's interests. It was urged at the argument that no agreement to refrain from legal proceedings was made by Beebe; but by his whole conduct, by the surrender of the old notes, and by the taking of new notes in their place, Beebe impliedly contracted to forbear and to abandon his proposed proceedings in liquidation. Had he instituted proceedings in equity to liquidate the two corporations before their notes fell due, this implied agreement would have been a sufficient defense to his suit. Had he sought the same result by proceedings in bankruptcy against the Pray-Small Company, the Federation Shoe Company might have restrained him from thus breaking his agreement. If there was a valid contract by Beebe not to proceed against the two companies, we have little difficulty in holding that it was a consideration for the execution of the notes by the bankrupt. Doubtless, a transfer of property from the Pray-Small Company was intended also as a consideration moving to the bankrupt for its signature to the notes; but we hold that this transfer was conceived and used by the parties as a method of strengthening the notes, while the implied agreement not to sue remained the principal consideration.

As value passed from Beebe to the bankrupt in part consideration for the notes, it follows, as above stated, that the creditor must prevail. We need not consider the other questions argued at the hearing arising from the failure of the Pray-Small Company to turn over any property to the bankrupt.

The decree of the District Court is reversed, and the case is remanded to that court, with directions to allow the appellants' proof of claims; and the appellants recover their costs of appeal.